**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **B&L FARMS, et al.,** | ) | |
| | ) | **MDL No. 1:18-md-2820-SNLJ** |
| **Plaintiffs,** | ) | |
| | ) | **Indiv. Case No. 4:17-cv-2418-SNLJ** |
| **v.** | ) | |
| | ) | |
| **MONSANTO COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM and ORDER**

Plaintiffs are crop growers and an herbicide applicator in Arkansas who filed this lawsuit against defendants Monsanto Company, BASF Corporation, and BASF SE in Arkansas state court. Defendants removed the matter to federal court in Arkansas and then successfully moved to transfer the matter to the Eastern District of Missouri, where the Multi-District Litigation ("MDL") *In re: Dicamba Herbicides Litigation*, No. 1:18md2820, was pending. The MDL is now winding down, as most plaintiffs involved in the case have settled with defendants. Because the plaintiffs in this case bring related but substantively different claims against defendants, their claims are not covered by the global settlement entered into by defendants and most plaintiffs involved in the MDL. As a result, litigation in this case has begun again. Defendants have filed motions to dismiss the plaintiffs' amended complaint [Docs. 95, 97]. The motions have been fully briefed and are ripe for disposition.

**Factual Background**

Plaintiffs in the MDL generally alleged that the defendants developed and sold soybean and cotton seeds resistant to the use of dicamba herbicide, an herbicide intended to kill "broadleaf" weeds. Dicamba has been used for many years, but, because of its volatility and prone to drift off-target, it was used only in the "burndown" or non-growing season for weed control. The defendants are alleged to have designed a "new" dicamba formulation that was marketed as safe to use with dicamba-tolerant ("DT") seeds during the growing season. But numerous plaintiffs have alleged that the "new" dicamba continues to be prone to off-target movement. As a result, the MDL plaintiffs say, farmers growing non-dicamba-tolerant crops have suffered injuries. That is largely the fact pattern reflected by most member cases of the MDL.

Plaintiffs—crop growers ("grower plaintiffs") and an herbicide applicator (the "applicator plaintiff")—have a different complaint. They say, after experiencing crop losses from off-target dicamba in 2016, they purchased DT seeds to protect against the use of dicamba herbicides by others. But on June 23, 2017, the Arkansas State Plant Board ("ASPB") banned the use and sale of dicamba in Arkansas effective in July 2017. Plaintiffs allege they were injured because they were unable to use the DT seeds they had purchased. They allege their losses include being charged a "tech fee" of $10 per acre for the purchase of DT seeds and, for the applicator plaintiff, modifying spray rigs at great cost to apply dicamba—which they were then unable to use.

Defendant Monsanto manufactured and sold DT seeds, and both defendants BASF and Monsanto manufactured and sold dicamba that was approved for application over-

the-top of DT seeds. Although not alleged in the complaint, Monsanto notes that its "new dicamba" product, Xtendimax, was not approved for sale in Arkansas in 2017. Only BASF's "new dicamba," Engenia, was approved in Arkansas in 2017. Plaintiffs—both grower and applicator plaintiffs—bring the following counts against the defendants: (1) strict products liability for manufacturing, selling, and distributing dicamba and DT seeds that were defective; (2) negligence in the design, development, marketing, distribution, and sale of dicamba and DT seeds; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5)violation of Arkansas's Deceptive Trade Practices Act ("ADTPA"); (6) fraud, deceit, and/or misrepresentation; (7) unjust enrichment, and (8) punitive damages.

**The Motions to Dismiss**

Defendants have moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content. . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all

reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

Monsanto and BASF each raise several points in support of their motions to dismiss. Monsanto's motion will be discussed first.

## I. Monsanto's Motion to Dismiss

Although plaintiffs' complaint is not entirely clear, it appears that only the grower plaintiffs actually purchased DT seeds from Monsanto, and the applicator plaintiff purchased dicamba but no DT seeds. Monsanto's arguments for dismissal are specific to each set of plaintiffs.

### A. Grower plaintiffs' claims

First, Monsanto argues that the grower plaintiffs' claims are barred by contract. Grower plaintiffs allege that they purchased Monsanto's DT seeds. To do so, those plaintiffs must have entered into Monsanto Technology/Stewardship Agreements ("MTSAs") with Monsanto. Monsanto asserts that the growers' claims are completely barred by the parties' MTSA.

The MTSA specifies the terms under which Monsanto permits use of its patented biotechnologies. For example, seed purchasers agree that they will use the seed solely for a single planting of a commercial crop; they won't transfer the seed to any other entity for planting; and they'll allow Monsanto access to land to examine and take samples of crops or seeds thereon. In addition, the MTSAs establish limitations regarding assertion of

claims against Monsanto. The parties agreed that the Agreement and the parties' relationship will be governed by Missouri law, and the MTSAs establish a mandatory notice requirement before plaintiffs may file any claims. The notice must include a statement setting forth the nature of the claim and the name of the Monsanto technology, and it must be delivered within 15 days of the grower's first observing issues regarding the performance or non-performance of the technology. The MTSA also limits the grower plaintiffs to the exclusive remedy of a return of the purchase price of their DT seeds.

Monsanto argues that the MTSA thus requires dismissal of all the grower plaintiffs' claims. Plaintiffs counter that the MTSA's notice, forum selection, choice of law, and limitation of liability provisions do not apply because the MTSAs are invalid contracts of adhesion. Plaintiffs, quoting an Arizona Supreme Court case, state that a contract of adhesion is

> typically a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract.… The distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms.

*Broemmer v. Abortion Servs. of Phoenix, Ltd.*, 173 Ariz. 148, 150 (1992) (internal quotation omitted) [Doc. 103 at 9.]. Whether a contract is one of adhesion, however, is not determinative of its enforceability. *Id.*

As the Eighth Circuit has held, the fact that one party is a corporation and the other is an individual "does little to inform the issue of whether the [corporation] exerted

unequal bargaining power." *Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 720 (8th Cir. 2003). "It is not enough to assert that one party was less sophisticated than the other. There must be some evidence that the party holding the superior bargaining power exerted that power in overreaching the less sophisticated party by, for example, engaging in fraud or coercion or by insisting on an unconscionable clause." *Id.* Here, plaintiffs allege fraud against the defendants, but they do not allege they were defrauded or coerced with respect to signing the MTSAs. The "mere fact that the contracts were form contracts does not per se lead to the conclusion that the [corporation] engaged in overreaching. *Id.* Indeed, this Court has held that similar Monsanto licensing agreements for Roundup Ready seeds are not contracts of adhesion. *See Monsanto Co. v. Vanderhoof*, No. 4:06-CV-134 CAS, 2007 WL 1240258, *7 (E.D. Mo. Apr. 27, 2007); *Monsanto Co. v. Dawson*, No. 4:98CV02004TCM, 2000 WL 33952259, *1-3 (E.D. Mo. Aug. 18, 2000); *Monsanto Co. v. Godfredson*, No. 4:99CV1691 CDP, 2000 WL 33952257, *1 (E.D. Mo. Apr. 13, 2000).

It bears mention again, too, that plaintiffs' argument regarding the unconscionability of the MTSA has already been rejected in this case by the district court in Arkansas, at least on the question of whether the forum selection class was invalid. Judge Marshall rejected the argument by transferring this action, finding that the "forum-selection provision in the parties' agreements is plain and clear. It's reasonable, not unconscionable." [Doc. 41.]

Because the MTSAs are valid and enforceable, the notice provisions therein bar the grower plaintiffs' claims. Nonetheless, plaintiffs contend that contractual notice is

not required because it would have been "completely useless," and that Monsanto already had "actual knowledge" of "issues leading the Plaintiffs to file their claim." [Doc. 103 at 11-13.] Plaintiffs cite no authority to support any such exclusions to contractual notice obligations. Rather, the law states that where a contract's notice requirements are not met, dismissal or summary judgment is proper. *Donovan v. LAS Brands, Inc.*, 242 S.W.3d 487, 487-88 (Mo. Ct. App. 2008); *Taylor v. Bi-State Development Agency*, 845 S.W.2d 588, 589 (Mo. Ct. App. 1992); *Cameo Homes v. Kraus-Anderson Constr. Co.*, 394 F.3d 1084, 1087-88 (8th Cir. 2005)). The notice provision of the MTSA thus bars all the grower plaintiffs' claims, even those claims based on fraud or other torts.

The MTSAs further support dismissal of the grower plaintiffs' Counts 3, 4, and 5 because it specifically disclaims implied warranties (Counts 3 and 4), and the Missouri choice-of-law provision means that grower plaintiffs' ADTPA claim must also fail (Count 5).[1] Notably, plaintiffs do not dispute these particular arguments.

**B. Applicator plaintiff's claims**

The MTSAs, of course, did not apply to the relationship between the sole "applicator plaintiff" and Monsanto. The Court thus turns to Monsanto's other arguments for dismissal with respect to the one applicator plaintiff.

[1] The Missouri choice-of-law provision in the MTSA also requires that the Missouri economic loss doctrine applies. This Court need not discuss the impact of the economic loss doctrine though in light of the several other reasons to dismiss the relevant claims.

**1. Fraud**

Monsanto argues that the applicator plaintiff's two fraud-based claims—under the ADTPA (Count 5) and common-law fraud (Count 6)—merit dismissal because plaintiff has failed to plead fraud with particularity. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy this rule, "'the complaint must allege such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" *Mitec Partners, LLC v. U.S. Bank Nat'l Ass'n*, 605 F.3d 617, 622 (8th Cir. 2010) (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). "'In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013) (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011)).

Plaintiffs appear to concede that they did not plead the "who, what, when, where, and how" behind their fraud claims. Instead, they rely on *Florida State Board of Administration v. Green Tree Financial Corp.*, 270 F.3d 645, 668 (8th Cir. 2001), for the proposition that "[w]hen the facts constituting the fraud would be 'peculiarly within the opposing party's knowledge . . . such allegations may be pleaded on information and belief.'" [Doc. 103] (quoting *Florida State Board of Administration*, 270 F.3d at 668). This does not excuse plaintiff from pleading facts. Even plaintiffs concede that pleading fraud "on information and belief" must be "accompanied by a statement of facts on which the belief is founded." [Doc. 59 at 24.] "Conclusory allegations that a defendant's

conduct was fraudulent and deceptive are not sufficient to satisfy the rule.'" *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting *Commercial Prop. Invs., Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

For Count 6, plaintiffs claim "fraud, deceit, and/or misrepresentation," but they fail to plead any specifics. They state only that defendants "knowingly made false representations of material fact regarding the suitability of Dicamba for use in the general market." [FAC ¶ 71.] This conclusory allegation does not satisfy the requirements of Rule 9(b). Plaintiffs identify no statement by Monsanto that plaintiffs allege was false, nor have they alleged the time, place, and manner of the statement, who made it, which plaintiffs heard it, and whether they relied on it. *See Mitec Partners*, 605 F.3d at 622. Such information, particularly regarding who heard the statements and whether they relied on it, is not within Monsanto's knowledge.

Rule 9(b)'s standard applies to an ADTPA claim, as well. *See Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1084-85 (E.D. Ark. 2013) (dismissing ADTPA claim based on allegations that "are conclusory and do not satisfy Rule 9(b)'s pleading requirements"). Plaintiffs have not pleaded particularized facts to support their ADTPA claim.

As a result, the applicator plaintiff's Counts 5 and 6 against Monsanto must be dismissed for failure to plead fraud with particularity.

**2. Implied warranty claims**

At the outset, it is unclear how the applicator plaintiff could maintain breach of warranty claims against Monsanto in the absence of any allegation the applicator plaintiff

bought seed from Monsanto. Even so, defendant Monsanto argues that the applicator plaintiff's breach of warranty claims (Counts 3 and 4) should be dismissed because that plaintiff did not provide Monsanto with pre-suit notice of the alleged breach. Arkansas law requires a plaintiff claiming breach to provide the defendant with notice of the claimed breach prior to bringing suit. *See Hartness v. Nuckles*, 475 S.W.3d 558, 562 (Ark. 2015) ("Under Arkansas' Uniform Commercial Code, a buyer of goods 'must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy.'") (quoting Ark. Code Ann. § 4-2-607(3)(a)). "[T]he giving of reasonable notice is a condition precedent to recovery [for breach of warranty] under the provisions of the commercial code and … the giving of notice must be alleged in the complaint in order to state a cause of action." *Id*. (quoting *Williams v. Mozark Fire Extinguisher Co*., 888 S.W.2d 303, 305 (Ark. 1994)); *see also Adams v. Wacaster Oil Co., Inc*., 98 S.W.3d 832, 835 (Ark. Ct. App. 2003) (same). Because the Amended Complaint does not allege that plaintiff Wilson Application, LLC gave the statutorily required notice to Monsanto, its breach of implied warranty claims will be dismissed. Notably, plaintiffs do not address this aspect of defendant Monsanto's motion to dismiss at all. Counts 3 and 4 will be dismissed as to the applicator plaintiff against Monsanto.

**3. Causation**

Having already determined that Counts 3, 4, 5, and 6 should be dismissed as against Monsanto by the applicator plaintiff, the Court turns to the applicator plaintiff's Counts 1, 2, 7, and 8. Monsanto argues that the applicator plaintiff's claims fail because

it has not effectively pleaded proximate causation. In particular, Monsanto argues that plaintiff must plead that Monsanto actually supplied the product whose defective condition proximately caused injury. Monsanto says that because its activities can't be tied to the products that allegedly went off-target, it can't be held liable. *See E.I. Du Pont de Nemours & Co. v. Dillaha*, 659 S.W.2d 756, 757-58 (Ark. 1983) (product liability theories require proof that defendant supplied the product whose defective or unfit condition proximately caused the plaintiff's damages); Ark. Code Ann. § 16-116-101 (defendant must have supplied product whose defective condition caused plaintiff's injury to be held liable for harm); *Ford v. GACS, Inc.,* 265 F.3d 670, 681-82 (8th Cir. 2001) (under Missouri law, defendant must have supplied product whose defect caused harm to be held liable on product liability theories). Notably, Monsanto asserts (and plaintiffs do not dispute) that none of its dicamba herbicide products were sold in Arkansas in 2016 or 2017, so its product could not have moved off-target.

Monsanto made a similar argument for dismissal of other dicamba-related claims by the MDL plaintiffs. In its motion to dismiss the Master Complaint in the MDL, Monsanto argued that plaintiffs had to demonstrate it was Monsanto's dicamba product—XtendiMax—that landed on and damaged plaintiffs' fields. As this Court previously ruled, though, "The fact that Monsanto did not manufacture, distribute, or sell the old dicamba herbicide that actually caused the [2016] damage is irrelevant—it is not part of the causal link under plaintiffs' theory of the claim." *In re Dicamba Herbicides Litig.*, 1:16-CV-299-SNLJ, 2018 WL 2117633, at *2 (E.D. Mo. May 8, 2018) (the "May 8 order"). This Court held in upholding the Master Complaint that, for the 2017 claims,

causation is supplied by either the third-party farmers' legitimate use of new dicamba herbicide that did not work as promised, or their foreseeable misuse of old dicamba herbicide. *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 720 (E.D. Mo. 2019). Either way, Monsanto was certainly responsible for the DT seeds over which dicamba was used, and the identity of the dicamba herbicide is not part of the causal link under plaintiff's theory. *See* 2018 WL 2117633, at *2; *see also Bader Farms v. Monsanto Co.*, 39 F.4th 954, 962 (8th Cir. 2022), *reh'g denied,* No. 20-3663, 2022 WL 3698378 (8th Cir. Aug. 26, 2022).

Here, Monsanto again argues that the applicator plaintiff cannot show proximate cause where its damages were caused by a defect in another company's product. This plaintiff's damages are at least one additional step removed from the injuries incurred by the MDL Master Complaint plaintiffs. In the MDL Master Complaint, plaintiffs alleged that dicamba drifted, harmed their non-DT crops, and caused them injury. Here, the applicator plaintiff alleges dicamba drifted, harmed nonparties' non-DT crops, and caused the Arkansas State Plant Board to ban dicamba use, which meant that the plaintiff could no longer legally spray dicamba. The only injury specifically alleged by the applicator plaintiff is that that it could not use its spray rigs that it had specially adapted to spray dicamba. [Doc. 3 at ¶ 31.]

This Court must note that the complaint does not distinguish between "old dicamba" that was used illegally in 2016 or "new dicamba" (sold by BASF) that was approved for use in 2017 over the top of DT crops. It is altogether unclear whether the applicator plaintiff refers to use of old dicamba or new dicamba. To the extent plaintiff

alleges it intended to use volatile old dicamba unlawfully and contrary to directions for use, it goes without saying that the claim fails. On the other hand, perhaps plaintiff is arguing simply that it was foreseeable that applicators would upgrade their spray rigs to apply new, low-volatility dicamba over DT seeds. But plaintiff neither alleges nor argues that it was foreseeable to Monsanto that state regulators would ban use of new dicamba, rendering use of equipment impossible. In the absence of that kind of allegation, the complaint fails. Moreover, plaintiff does not allege why the ASPB banned dicamba, nor whether the dicamba-related complaints in 2017 involved lawful use of new dicamba (BASF's product Engenia) or merely the unlawful use of old dicamba. Although the Court will dismiss the applicator plaintiff's Counts 1 and 2 as to Monsanto without prejudice, the applicator plaintiff will be permitted leave to replead those counts as to Monsanto within thirty days.

As for to the applicator plaintiff's unjust enrichment claim (Count 7), there is no allegation that the application plaintiff even purchased anything from Monsanto. Indeed, the applicator plaintiff could not have purchased Monsanto's new dicamba—Xtendimax—because it was not for sale in Arkansas. Thus Count 7 must be dismissed as to the applicator plaintiff.

Finally, Count 8 for punitive damages will be dismissed without prejudice in the absence of any substantive claims remaining.

## II. BASF's Motion to Dismiss

BASF makes a variety of arguments in favor of dismissal. BASF's position is distinct from Monsanto's because BASF manufactured the dicamba herbicide and not the DT seed at issue in this lawsuit. BASF's arguments are discussed in turn below.

### A. Counts 1, 2, 3, 4, 5, and 6

The Court will first address BASF's arguments regarding Counts 1 through 6 because plaintiffs appear to concede them. Plaintiffs do not address defendant BASF's arguments that plaintiffs cannot adequately plead causation related to plaintiff's strict liability (Count 1) and negligence (Count 2) claims. *See, e.g.*, *Fields v. Wyeth, Inc.*, 613 F. Supp. 2d 1056, 1060 (W.D. Ark. 2009). Plaintiffs do not address BASF's argument that BASF's sole dicamba product sold in Arkansas—Engenia—has a valid disclaimer of implied warranties that precludes plaintiffs' implied warranty claims (Counts 3 and 4). *See In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 740 (E.D. Mo. 2019). Plaintiffs do not address BASF's argument that this Court has already determined plaintiffs' ADTPA claim (Count 5) is barred by the ADTPA safe harbor provision in a related case. *See Coy's Honey Farm, Inc. v. Bayer Corp.*, No. 1:21cv89 SNLJ, 2022 WL 179210, at *4 (E.D. Mo. Jan. 20, 2022). Finally, plaintiff does not address BASF's argument that plaintiffs' fraud claim (Count 6) fails for failure to plead reliance. *See MFA Mut. Ins. Co. v. Keller*, 623 S.W.2d 841, 843 (Ark. 1981) (noting that reliance requires plaintiff was "induced…to act or not to act by reason of [defendant's] misrepresentations.").

"[A] plaintiff's failure to address a defendant's arguments on a motion to dismiss operates as an abandonment of those claims." *Huskey v. Colgate-Palmolive Co.*, 486 F.Supp.3d 1339, 1349 (E.D. Mo. 2020) (quotation omitted). Defendant BASF also had other grounds for dismissal of Counts 1-6, including standing (Counts 1-4) and failure to plead fraud with particularity (Counts 5 and 6), but this Court need not address them. Counts 1-6 will dismissed as to BASF.

**B. Counts 7 and 8**

Remaining for consideration are plaintiff's claims for unjust enrichment (Count 7) and punitive damages (Count 8). Among BASF's arguments for dismissal of plaintiffs' unjust enrichment claim is that the Engenia product label precludes such a claim. As noted above, this Court already determined that the Engenia label's disclaimer of implied warranties is valid and bars the implied warranty claims. *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d at 740. The label also includes the statement that BASF's exclusive liability for any claims involving Engenia "shall be limited to repayment of the purchase price of the product," and that BASF disclaims "any liability for consequential, exemplary, special or indirect damages resulting from the use or handling" of Engenia.

Under Arkansas law, "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable," and a "limitation of damages where the loss is commercial" is not prima facie unconscionable. Ark. Code Ann. § 4-2-719(3).

Plaintiffs respond that in fact the product label does not bar unjust enrichment or punitive damages claims because the label is an unconscionable exculpatory clause. *See* Doc. 105 at 12 (citing *Finagin v. Arkansas Development Finance Auth.*, 355 Ark. 440

(2003)). This Court has already found that the label's other disclaimers are valid, however, and plaintiff cites no cases where an herbicide label's limitation of remedies provisions was found to be unconscionable. Indeed, Arkansas courts have upheld and enforced similar limitation of remedies provisions on herbicide products, finding that the provision was not unconscionable because there was "no indication of oppression or surprise." *Peacock v. Ciba-Geigy Corp.*, 1980 WL 98419 (E.D. Ark. Oct. 30, 1980); *see also*, *e.g.*, *Southland Farms, Inc. v. Ciba-Geigy Corp.*, 575 So. 2d 1077 (Ala. 1991); *Kleven v. Geigy Agric. Chems.*, 227 N.W.2d 566 (Minn. 1975); *Monsanto Agric. Prods. Co. v. Edenfield*, 426 So. 2d 574 (Fla. Dist. Ct. App. 1982); *Slemmons v. Ciba-Geigy Corp.*, 385 N.W.2d 298 (Ohio Ct. App. 1978)).

Plaintiffs' unjust enrichment and punitive damages claims plainly seek remedies not allowed by the Engenia product label. Counts 7 and 8 will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Monsanto's motion to dismiss [Doc. 95] is GRANTED, but plaintiff Wilson Application, LLC may file an amended complaint as to Counts 1 and 2 against Monsanto within 30 days.

**IT IS FURTHER ORDERED** that defendant BASF's motion to dismiss [Doc. 97] is GRANTED.

Dated this 14th day of October, 2022.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE